**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DOMINICK MARTIN, an individual, and          :
JOHN PANARESE, an individual,                :
                                             :          No. 1:22-cv-10438
            Plaintiffs,                       :
                                             :
    v.                                        :
                                             :
SECOND STORY PROMOTIONS, INC.,                :
                                             :
            Defendant.                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS
## THE COMPLAINT


Adi Kanlic (*admitted Pro Hac Vice*)
O'HAGAN MEYER, LLC
One East Wacker Drive
Suite 3400
Chicago, IL 60601
Ph: 312-422-6100
Fx: 312-422-6110
akanlic@ohaganmeyer.com


*Attorney for Defendant, Second Story Promotions, Inc.*


March 9, 2023

## TABLE OF CONTENTS

Page

Table of Contents _____ 2

Table of Authorities _____ 3

I.    INTRODUCTION_____ 5

II    STATEMENT OF FACTS_____ 6

III.   LEGAL STANDARD_____ 9

      A. Rule 12(b)(1) Motion to Dismiss_____ 9

IV.   ARGUMENT _____10

      A. Plaintiffs Had No Actual Knowledge Of A Barrier To Access Goods Or Services
         From Defendant Since They Never Contacted Defendant Via Telephone or Email_10

      B. The Plaintiffs' Claims Are Moot Because Second Story Has Remedied All Alleged
         ADA Violations and The Website Renovations Render This Suit Moot._____ 15

      C. Plaintiffs Cannot Show An "Injury In Fact" Based On the Facts As They Did Not
         Plead With Specificity That They Will Revisit The Website Or Plead A Specific
         Product They were Interested In Purchasing_____ 20

      D. Plaintiff's New York State Human Rights Law Claim Must Be Dismissed____ 22

V.    CONCLUSION_____ 23

Certificate of Service_____ 24

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

***Supreme Court of the United States***

*Clapper v. Amnesty Intern, USA*, 568 U.S. 398, 409 (2013) _____ 20

*Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013) _____ 15

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) _____ 20

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) _____ 20

*Spokeo v. Robins*, 136 S. Ct. 1540, 1547-49 (2016) _____ 20

***District Courts***

*Calcano v. Swarovski North America Limited*, 36 F.4th 68, 75 (2d Cir. 2022) _____ 20, 21

*Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996) _____ 16

*Castillo v. John Gore Organization, Inc.* 2019 WL 6033088, *5 (E.D.N.Y. Nov. 14, 2019) __ _____ 11, 12

*Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 _____ 16

*Diaz v. Kroger*, No. 18 Civ. 7953 (KPF), 2019 WL 2357531, at *3 (S.D.N.Y. June 4, 2019) ____ _____ 16, 17, 19

*Domiguez v. Athleta LLC*, 19-cv-10168 (GBD) at *5, 2021 WL 918314 (S.D.N.Y. Mar. 10, 2021) _____ 15

*Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 26 (2d Cir. 2014) _____ 22

*Gorecki v. Dave & Buster's, Inc.*, 2017 WL 6371367, at *5 (C.D. Cal. Oct. 10, 2017) ____ 14

*Greater New York Hospital Assoc. v. United States*, 1999 WL 1021561, at *4 (S.D.N.Y. Nov. 9, 1999) _____ 10

*Guglielmo v. Nebraska Furniture Mart, Inc.*, No. 19 Civ. 11197 (KPF), 2020 WL 7480619, at *4 (S.D.N.Y. Dec. 18, 2020) _____ 16, 19, 22

*Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 647 (2d Cir. 1998) _____ 15

*Jaquez v. Aqua Carpatica USA, Inc.* 20 CV 8487 (ALC), 2021 WL 3727094, at \*6 (S.D.N.Y. Aug. 20, 2021) ........................................................................................................ 22

*Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).......................... 10

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).................................. 9, 18

*Markett v. Five Guys Enterprises LLC*, No. 17 Civ. 788 (KBF), 2017 WL 5054568, at \*3 (S.D.N.Y. July 21, 2017) ........................................................................................... 17

*Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 887 n. 15 (2d Cir. 1996) ........ 10

*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)...................... 9

*Rodal v. Anesthesia Grp. of Onondaga, P.C.,* 369 F.3d 113, 117 n.1 (2d Cir. 2004)......... 22

*Tasini v. New York Times Co., Inc.*, 184 F.Supp.2d 350, 353 (2d Cir. 2002) .................... 10

*Van Wie v. Pataki*, 267 F.3d 109, 114 (2d Cir. 2001) ........................................... 18, 19

*Yandow v. Krenau,* 474 Fed. App'x. 797, 799 (2d Cir. 2012) .................................. 15

*Yusim v. United States Department of Housing and Urban Development*, 409 F.Supp.3d 125, 128 (E.D.N.Y. Mar. 28, 2018) ....................................................................................... 20

**FEDERAL STATUTES**

42 U.S.C. § 12102(1)-(2) *et seq.* ................................................................... 6

**FEDERAL REGULATIONS**

28 CFR §§ 36.101 *et seq.* .......................................................................... 6

28 CFR § 36.303(c)(1)(ii) ........................................................................... 11

28 CFR Pt. 36, App'x C ............................................................................. 11

**NEW YORK STATUTES**

New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ......................... 6, 22

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(1)........................................................................ 5, 9, 11, 22

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS THE COMPLAINT

Defendant SECOND STORY PROMOTIONS, INC. ("Second Story" or "Defendant") submits this Memorandum of Law in support of its Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing.  For the reasons set forth below, this Motion is due to be granted.

### I.    INTRODUCTION

Plaintiffs Dominick Martin ("Martin") and John Panarese ("Panarese") (together, "Plaintiffs") assert Second Story's website, www.secondstorypromotions.com (hereinafter the "Website"), was not equally accessible to blind and visually-impaired consumers in violation of the American with Disabilities Act ("ADA") when they visited the Website in June 2022 and October 2022.  (See Complaint attached as Exhibit A, ¶¶ 25, 28).  As set forth in further detail below, Plaintiffs lack standing to bring the claim against Second Story as there are no allegations in the Complaint that Plaintiffs ever attempted to contact Defendant through its customer service line or email address, although that information was readily available on the Website.

Moreover, Second Story has undertaken to comply with ADA guidelines and has remedied all alleged violations of the ADA raised by Plaintiffs in their Complaint.  Second Story's Website is compliant and wholly accessible with screen reader software and therefore the claims raised in Plaintiff's Complaint are moot and the Complaint must be dismissed pursuant to the Fed. R. Civ. Pro. 12(b)(1) for lack of subject matter jurisdiction.

Further, Plaintiffs also fail to allege an injury-in-fact as they fail to plead what products, if any, they were prevented from purchasing in June and October of 2022, and fail to logically plead they have any future intent to visit the Website other than in a vague and conclusory manner.

Finally, Plaintiffs also makes claims under the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* Should this Court properly dismiss Plaintiff's federal claims under the ADA, it should further dismiss Plaintiff's New York State Human Rights Law claim.

## II.    STATEMENT OF FACTS

Martin is a resident of the State of California and was at all times relevant to the matters as asserted in the Complaint. (Ex. A, ¶14). Panarese is a resident of Hauppauge, New York and was at all times relevant to the matters as asserted in the Complaint. (Ex. A, ¶15). Plaintiffs also represent they are a "blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2) – and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* – and as defined under the NYSHRL." (*Id.*). Plaintiffs also allege that they "genuinely want to avail themselves of Defendant's goods" and in the same breath admit that "they are also 'testers'" who have "filed multiple lawsuits against various operators of commercial websites[.]" (Ex. A, ¶ 16). Second Story sells promotional products and related products throughout the United States, including the State of New York. (Ex. A, ¶¶ 5, 17). Second Story also owns and operates the www.secondstorypromotions.com Website.

Martin alleges that in June 2022, he visited the website and "encountered multiple access barriers that denied Plaintiff full and equal access to the goods and/or services offered (and made available for the general public" and that "these access barriers were the reason Plaintiff Martin was denied the full enjoyment of the goods and/or services offered on the website." (Ex. A, ¶ 25). Martin alleges that his purpose was to "purchase products, goods, and/or services" on the Website. (Ex. A, ¶ 4). Martin also alleges that that he "intends to return to the website in order to transact business there as soon as the accessibility barriers are cured." (Ex. A, ¶ 27). Panarese makes

nearly identical allegations of inaccessibility occurring in October 2022. (Ex. A, ¶¶ 28, 30). Martin further alleges, in a wholly vague and non-specific manner that he encountered the following accessibility barriers on the Website: "(a) Redundant information at the top of the pages of the website, with no jump to navigation and/or main content button(s); (b) Redundant links; (c) Links that are titled differently, located on the same page, and lead to the same place on the website." (Ex. A, ¶ 26(a)-(c)). Panarese alleges that the barriers he allegedly encountered were: "(a) A web dialog for the chat option and a promotional offer that takes the focus of the screen reader and prevents access to other items on the homepage; (b) Unlabeled links on the homepage and subsequent pages." (Ex. A, ¶ 29(a)-(b)). However, neither Martin nor Panarese allege *any* specific redundant information, redundant links, mistitled links, or unlabeled links that they actually encountered. Moreover, as set forth below, screen reader users can interact with the chat feature and promotional pop-up offers without it preventing access to other items on the homepage.

Further, Plaintiffs fail to plead in the Complaint that they ever contacted Second Story or notified that they allegedly had trouble accessing the Website or needed product information or assistance. Nor do Plaintiffs plead in the Complaint that they could not access Second Story's customer service number or email address. If Plaintiffs called Second Story's customer service line when they allege they reviewed the Website in June 2022 and October 2022, they could have worked with someone from Second Story's customer service team to place an order or learn information related to Second Story's products, and much more. (Declaration of Teresa Wolken, attached hereto as Exhibit B, ¶ 8). Alternatively, Plaintiffs could have contacted Defendant through its dedicated customer support email address or reported an accessibility issue through the same email address. (*Id.*).

Plaintiffs make vague claims that they "browsed and attempted to transact business on Defendant's website" but were "denied . . . full and equal access to the goods and/or services offered" due to the Website's alleged accessibility issues. (Ex. A, ¶¶ 4, 5, 25, 28). As stated above, Plaintiffs allege that they encountered "redundant information", "redundant links", "links that are titled differently, located on the same page, and lead to the same place on the website," and "unlabeled links on the home page and subsequent". (Ex. A, ¶¶ 26(a)-(c), 29(b)). However, Plaintiffs do not identify <u>any specific portion</u> of the Website that demonstrated such issues. (*Id.*). However, Second Story has undertaken to comply with the WCAG and completed necessary improvements to make the Website as accessible and complaint with WCAG 2.1 standards as possible. (Ex. B, ¶¶ 7, 8, 11). To identify any potential accessibility issues on the Website, Second Story assessed the accessibility of the Website internally. (Ex. B, ¶ 5).

In an abundance of caution, Second Story even hired a totally blind screen reader user named Robert Kingett to undergo manual testing and review the Website for accessibility. (Ex. B, ¶ 13). On February 8, 2023, Robert Kingett reviewed the Website and a video was made of him reviewing the Website using a screen reader. (*See* Declaration of Robert Kingett attached as Exhibit C, ¶¶ 4, 7). Mr. Kingett's review of the Website directly addresses and refutes the few specific allegations of the accessibility barriers Plaintiffs allegedly encountered. Indeed, during that review, Mr. Kingett immediately encountered a promotional pop-up that he was able to interact with and close out to access the home page, and he was also able to interact with the chat option and close out of it to access the home page. (Ex. C, ¶6; *see* video of Robert Kingett's review of Second Story's Website as Ex. 1[1] to Ex. C; see also Ex. A, ¶29 (a)). Mr. Kingett was also able

---

[1]On March 7, 2023, Second Story filed a Letter Motion which included a request to submit video evidence in support of its Motion to Dismiss pursuant to Section 5.2 of the Southern District of New York Electronic Case Filing Rules & Instructions. (ECF No. 12).

to learn more about Second Story's business, he was able to locate Second Story's "Accessibility Statement" which provides a dedicated email address and phone number for customer service support as an alternative method of contact should screen reader users encounter any accessibility issues, Defendant's phone number, email address, and hours of operation that are also located in the footer of the homepage, his screen reader read the links for sub-menus on the Website, his screen reader described the images of its products, pricing information on products, the product descriptions of individual products that reviewed, and he was able to learn about and go through the steps to purchase "Broad Spectrum Lip Balm". (*Id.*). Indeed, Mr. Kingett stated that in his review that the Website was "very accessible" he had no issues using his screen reader on the Website and stated that a visually impaired individual should be able to use the Website if they know how to use a screen reader. (*See* Ex. 1 to Ex. C; Ex. C, ¶9).

Indeed, Second Story has invested time and resources in keeping its Website accessible. (Ex. B, ¶14). Second Story intends to keep the Website up to date with any new standards because it does not wish to be involved in any further, unnecessary litigation and because of its commitment to being as accessible to as many of its patrons, and as much of the public, as possible. (*Id.*).

### III.    LEGAL STANDARD

#### A.    Rule 12(b)(1) Motion to Dismiss

The court properly dismisses a case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The burden is on the plaintiff asserting jurisdiction to prove by a preponderance of the evidence that jurisdiction is proper. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). Attacks on the subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) may come in two forms. "A *facial* challenge

contests the sufficiency of the pleadings." *Tasini v. New York Times Co., Inc.*, 184 F.Supp.2d 350, 353 (2d Cir. 2002) (emphasis in original) (internal citations omitted); see also *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 887 n. 15 (2d Cir. 1996) (a *facial* attack challenges the sufficiency of the jurisdictional facts alleged, not the facts themselves.") (emphasis in original) (internal citations and quotes omitted).   "A *factual* attack, by contrast, 'challenges whether sufficient facts exist for the court to determine that it has jurisdiction to hear the plaintiff's claims'." *Id.* citing *Greater New York Hospital Assoc. v. United States*, 1999 WL 1021561, at *4 (S.D.N.Y. Nov. 9, 1999).   "While a court must accept as true all material allegations of the complaint in a *facial* attack, in a *factual* challenge, by contrast, no presumptive truthfulness attaches to the complaint's jurisdictional allegations; rather, the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Id.* (internal citations omitted).   The attack in this case is factual.

Since a factual jurisdictional challenge is involved, the court is permitted to refer to extrinsic evidence to the pleadings. *Id.* citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986); *see also Greater New York Hospital Assoc.*, 1999 WL 1021561, at *4 ("[i]n reviewing a *factual* challenge to subject matter jurisdiction, the court may rely on the plaintiff's complaint, as well as look to extrinsic evidence.") (emphasis in original).

## IV.    ARGUMENT

### A.    Plaintiffs Had No Actual Knowledge Of A Barrier To Access Goods Or Services From Defendant Since They Never Contacted Defendant Via Telephone or Email.

First, Second Story asserts that based on the language of ADA, any website accessibility lawsuit filed should be dismissed if a company defendant has available customer service line or customer service email that a plaintiff does not even attempt to utilize.  Indeed, the ADA allows merchants such as Defendant to dictate what auxiliary aids and services they

would offer to disabled individuals.  *See* 28 CFR § 36.303(c)(1)(ii) ("A public accommodation should consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed to ensure effective communication, but the ultimate decision as to what measures to take rests with the public accommodation, provided that the method chosen results in effective communication." (emphasis added); *see also* 28 CFR Pt. 36, App'x C ("[t]he auxiliary aid requirement is a flexible one.  A public accommodation can choose among various alternatives as long as the result is effective communication.  For example, a restaurant would not be required to provide menus in Braille for patrons who are blind, if the waiters in the restaurant are made available to read the menu.  Similarly, a clothing boutique would not be required to have Brailled price tags if sales personnel provide price information orally upon request; and a bookstore would not be required to make available a sign language interpreter, because effective communication can be conducted by notepad).  Without calling or emailing (despite this information being located in several locations on the Website), Plaintiffs know nothing about the range of auxiliary aids and services that Defendant offers to the visually impaired.

In *Castillo v. John Gore Organization, Inc.*, Judge Allyne R. Ross granted defendant's Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of standing under the ADA, in part, because Castillo did not have actual knowledge of a barrier to access of defendant's theater.  *Castillo v. John Gore Organization, Inc.* 2019 WL 6033088, *5 (E.D.N.Y. Nov. 14, 2019).  In *Castillo*, the crux of plaintiff's complaint was that she (a diabetic) was deterred from purchasing a ticket to attend a show at defendant's theater after seeing a policy on defendant's website prohibiting patrons from bringing in outside food.  *Id.* at *2.  However, defendant's homepage also contained an accessibility policy that stated "[t]he Charles Playhouse is accessible to all

11

patrons.  Guests with accessibility questions or who require additional assistance may email the Playhouse directly … or call the house manager ….” *Id.*  The Court stated that the only injury that Castillo could have suffered is deterrence from visiting the theater since she alleged that she did not purchase a ticket due to defendant's policy of prohibiting outside food. *Id.* at *5.  The Court stated, “to have suffered an injury under the deterrence theory, the plaintiff must have had actual knowledge of a barrier to access.” *Id.* at *5.  However, “[t]he plaintiff makes no claim that she contacted the theater, as the defendant's website invited her to do, and was denied permission to bring outside food.  Accordingly, she could not have had actual knowledge that the defendant's outside-food prohibition would bar her access to the theater, as defendant's website made it abundantly clear that there was at least a possibility of accommodation.” *Id.* at *5.  Despite defendant having provided methods of contact for such inquiries, Castillo never called or emailed the theater to ask whether there were any exceptions to the no outside food or drink policy. *Id.*

Plaintiffs alleges that they are both screen reader users, and allege that they reviewed the Website in June 2022 and October 2022 but that they “encountered multiple access barriers”.  (Ex. A, ¶¶ 25, 28).  However, Plaintiffs fail to plead that they could not locate or access Defendant's customer service phone number or email address on the Website.  It just makes common sense that if Plaintiffs indeed intended to buy “products, goods and/or services” from Defendant that they would at least attempt to call Defendant via its customer service line or email Defendant.

As shown through the video of Mr. Kingett's review of the subject Website, Plaintiffs could have contacted Defendant through multiple resources on the Website.  Specifically, Plaintiffs could have used Defendant's customer service number or dedicated customer

service email address located in the footer of the homepage to contact Defendant for assistance with the information, item, or transaction Plaintiffs sought to complete or regarding any accessibility barriers they purportedly encountered on the Website that allegedly inhibited him from purchasing a product from Defendant. (*See* Ex. 1 to Ex. C). Mr. Kingett also stated during his review that he located the phone number and email address for Defendant such that if he ran into any accessibility issues on the Website he could find another way to purchase an item. (*Id.*).

Further, Defendant has an "Accessibility Statement" page that is entirely devoted to providing Website users with information regarding Defendant's accessibility efforts for its Website, along with alternative contact information for visitors who have concerns regarding the accessibility of the Website. This section states:

> **Accessibility Assistance**
>
> If you have difficulty using or accessing any element of this website, please feel free to call us at 866.519.8400 or email us at sales@secondstorypromotions.com. We will work with you to provide the information, item or transaction you seek through a communication method that is accessible for you consistent with applicable law (for example, through telephone support).
>
> **Doing Better**
> Second Story Promotions desires to provide a positive customer experience to all our customers, and we aim to promote accessibility and inclusion. Our goal is to permit our customers to successfully gather information and transact business through our website. Whether you are using assistive technologies like a screen reader, a magnifier, voice recognition software or captions for videos, our goal is to make your use of Second Story Promotions' website a successful and enjoyable experience.
>
> **Ongoing Effort**
> Although we are proud of the efforts that we have completed and that are in-progress, we at Second Story Promotions view accessibility as an ongoing effort.

**Contact Us**
Please contact us if you have any feedback or suggestions as to how we could improve the accessibility of this website.
Phone: 866.519.8400
Email: sales@secondstorypromotions.com
(*See* Ex. 1 to Ex. C).

If Plaintiffs actually tried to call Second Story, they could have been helped by a Second Story employee who could have placed an order for them, they could have been provided information related to Defendant's various promotional products, and much more. (Ex. B, ¶8).    Alternatively, Plaintiffs could have emailed Second Story using the sales@secondstorypromotions.com email address to be assisted through a communication method that would have been accessible for Plaintiffs.  (*See* Ex. 1 to Ex. C). Moreover, Plaintiffs could have reported any accessibility issues encountered directly on the website through Second Story's customer service phone number or email address.  *Id.*  There are no allegations in the Complaint that Plaintiffs ever attempted to contact Defendant using these multiple avenues of alternative methods of communication or reported any accessibility barriers they allegedly encountered, or that the Accessibility Statement and contact information is inaccessible with their screen readers at any time.  It is clear from the review of the Website that Mr. Kingett (who is a totally blind screen reader user that also uses a screen reader) could fully access Second Story's Accessibility Statement and contact information, and the Court can hear his screen reader read out this information verbatim. (Ex. C, ¶6, *see also* Ex. 1 to Ex. C).  There is no dispute that the alternative contact information located throughout the Website, including the homepage and Accessibility Statement, is fully accessible with screen reader software.  (*See* Ex. 1 to Ex. C[2]) (*see contra*, *Gorecki v. Dave &*

---

[2] For the Court's convenience, the timestamp of Mr. Kingett's screen reader software reading the accessibility statement aloud begins at 6:23.

*Buster's, Inc.*, 2017 WL 6371367, at \*5 (C.D. Cal. Oct. 10, 2017) (Denying defendant's concurrent motion to dismiss and motion for summary judgment on the basis that plaintiff raised a genuine dispute as to whether defendant's "accessibility banner" was accessible to screen reader users.). Moreover, whether or not these alternative methods of communication are preferable to Plaintiffs is of no matter so long as the alternative methods are effective. *See Domiguez v. Athleta LLC*, 19-cv-10168 (GBD) at \*5, 2021 WL 918314 (S.D.N.Y. Mar. 10, 2021) ("Plaintiff spoke with Defendant's employee about the availability of store gift cards, and also concedes that Plaintiff may use the gift card with the help of a sighted employee. While this may not be the Plaintiff's preferred method of communication about information in the gift card, it is nonetheless effective."). Accordingly, Plaintiffs lack standing under the ADA because they could not have had actual knowledge of a barrier to access Defendant's goods as they did not even try to contact the company via telephone or email for assistance.

### B. The Plaintiffs' Claims Are Moot Because Second Story Has Remedied All Alleged ADA Violations and The Website Renovations Render This Suit Moot.

The existence, at all stages of litigation, of an actual case or controversy is a requirement under the United States Constitution for a federal court to exercise subject matter jurisdiction over a defendant. Indeed, it has been long held that "an actual controversy must be extant at all stages of review, not merely at the time that the complaint is filed." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013). Further, "the mootness doctrine is derived from the constitutional requirement that federal courts may only decide live cases or controversies." *Yandow v. Krenau,* 474 Fed. App'x. 797, 799 (2d Cir. 2012) (quoting *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 647 (2d Cir. 1998).

However, there is an exception to the application of mootness. Specifically, "[a] request for injunctive relief such that sought by a Plaintiff under the ADA, will only be deemed moot by

a defendant's voluntary compliance with the statute if it the defendant meets the 'formidable burden' of demonstrating that it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Guglielmo v. Nebraska Furniture Mart, Inc.*, No. 19 Civ. 11197 (KPF), 2020 WL 7480619, at *4 (S.D.N.Y. Dec. 18, 2020). "More specifically, '[t]he voluntary cessation of allegedly illegal activity may render a case moot 'if the defendant can demonstrate that [i] there is no reasonable expectation that the alleged violation will recur and [ii] interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'"" *Id.* citing *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 (quoting *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996)).

In *Guglielmo*, a nearly identical website accessibility lawsuit was dismissed based on mootness. In *Gugliemo*, the defendant attested that the "[i] [d]efendant had invested time and resources in improving the [w]ebsite's accessibility, (ii) [d]efendant has since remedied each of the ADA violations alleged by Plaintiff; and (iii) going forward, [d]efendant intends to commence a significant redesign of the [w]ebsite, of which accessibility will be a 'central aspect'." *See Guglielmo*, 2020 WL 7480619, at *6. The Court reasoned that "[m]uch like evidence that has previously been found sufficient by this Court, [d]efendant's attestation offer significantly more than some 'conclusory assertion' of the [w]ebsite's ADA compliance." *Id.* citing *Diaz v. Kroger*, No. 18 Civ. 7953 (KPF), 2019 WL 2357531, at *3 (S.D.N.Y. June 4, 2019) (finding that the defendant's affidavit "address[ed] the deficiencies that the courts have identified in defense showings made in support of mootness arguments."). The Court pointed out that the defendant detailed its audit process, provided quantified examples of its audit findings, observed "very few" instances of the access barriers alleged by *Gugliemo* were actually identified, and attested that its employees resolved each of the identified issues. *Id.* Further, "[a]nd while other courts in this

District have found that the fact that a defendant 'may be in the process of updating the accessibility of its website' *Markett v. Five Guys Enterprises LLC*, No. 17 Civ. 788 (KBF), 2017 WL 5054568, at *3 (S.D.N.Y. July 21, 2017) to be insufficient to demonstrate mootness, the . . . [d]eclaration's summary of [d]efendant's achievements *to date* does meet 'the stringent showing required by the Supreme Court's mootness precedent" *Diaz*, 2019 WL 2357531, at *5.  *Id.*

Here, the Complaint alleges that Martin visited the Website in June 2022 and Panarese visited the Website in October 2022 where they "browsed and attempted to transact business" on the Website to "purchase products, goods, and/or services".  (Ex. A, ¶¶ 4, 5).  Plaintiffs allege that they both "[intend] to return to the website in order to transact business there as soon as the accessibility barriers are cured."  (Ex. A, ¶¶ 27, 30).  Plaintiffs further alleges that "[t]he access barriers Plaintiffs encountered have caused a denial of Plaintiffs' full and equal access in the past, and now deter Plaintiffs from visiting the website, presently and in the future."  (Ex. A, ¶31).

However, Mr. Kingett's declaration, along with the video of him successfully navigating the Website unequivocally show that Second Story has removed any alleged barriers, brought the Website up to compliance to Plaintiffs' preferred WCAG 2.1 standards, and is committed to keeping the Website up to date with accessibility standards.  Mr. Kingett, who is totally blind, reviewed the Website on February 8, 2023.  (Ex. C, ¶4).  Mr. Kingett's review of the Website directly rebuts Plaintiffs' allegations as he was able to interact with and close out pop-ups on the Website to access the home page, and he was also able to interact with the chat option and close out of it to access the home page.  (*See* Ex. 1[3] to Ex. C).  Furthermore, Plaintiffs' allegations of the other access barriers on the Website are wholly conclusory and unspecific as they fail to allege

---

[3] For the Court's convenience, the timestamp of Mr. Kingett closing out the pop-up and interacting with the chat option are at 3:05 and 16:24.  (*See* Ex. 1 to Ex. C).

what text or links, if any, Plaintiffs encountered that actually caused access barriers.  Moreover, Mr. Kingett stated in his declaration that "[e]very part of the Website I reviewed with my screen reader was accessible[,]" and "[t]he Website is accessible and a visually impaired individual should be able to use the website if they actually know how to use a screen reader."  (Ex. C, ¶¶5, 9).  This Court can watch Mr. Kingett go through the Website with his screen reader.  (*See* Ex. 1[4] to Ex. C).  Mr. Kingett, Plaintiffs, and/or any other visually impaired individual using a screen reader can purchase all the promotional products that they want on the Website.

Indeed, Second Story has invested significant resources in understanding and addressing the accessibility issues alleged by the Complaint.  (Ex. B, ¶14).  Ms. Wolken and Defendant's website developers reviewed the allegations in the Complaint and made sure that the purported deficiencies (which not all were true) were corrected and that no such barriers to access, as alleged, exist with the Website.  (Ex. B, ¶¶ 5-8).  The Website, www.secondstorypromotions.com, has undergone updates and since the updates have been completed, the alleged deficiencies claimed by Plaintiffs existed in June and October 2022 no longer exist.  (Ex. B, ¶9).  Because the allegations identified by Plaintiffs have been addressed, there is no "live case or controversy," and this case should be dismissed for lack of subject matter jurisdiction.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Further, given Second Story's past and future commitments to accessibility, the claims in this case are not "capable of repetition, yet evading review."  *Van Wie v. Pataki*, 267 F.3d 109, 114 (2d Cir. 2001).  Second Story has demonstrated its commitment to making its Website accessible.  (Ex B, ¶¶ 4-14).  Second Story ensured that all images have been properly labeled with

---

[4] The timestamp of Mr. Kingett selecting and buying lip balm begins at 10:01.  (*See* Ex. 1 to Ex. C).

alt-text, that text on the website can be read by screen readers, that the Website is usable to keyboards, that all landmarks were properly inserted and defined, that all headings on the Website were properly defined, that the Website has proper labeling, that all interactive elements can be used with a keyboard, that all submenus are usable with screen readers and properly announced, and that social media icons can be accessed without issue or confusion.  (Ex. B, ¶ 8).  These considerable efforts should allay concern about Second Story's commitment to working on accessibility issues, and clarify that there is no reasonable expectation that Plaintiffs will be able to raise their claims again.  *Van Wie*, 267 F.3d at 114.  Moreover, there is no reasonable expectation that the alleged violation will recur as Second Story "is committed to continuing to keep its Website up to date and complaint with all applicable standards to make the Website as accessible to all as possible."  (Ex. B, ¶11).  Second Story's remediation and commitment to keep the Website up to date is significant as it comports with this Court's prior dismissals of website accessibility complaints when a company defendant remediated the alleged barriers the plaintiff claimed impaired his use and enjoyment of the company's website.  *See Diaz*, 2019 WL 2357531, *5.  This Court explained:

> "[T]o review, Plaintiff identified several barriers to his use and enjoyment of the Website.  Defendant removed those barriers, brought the Website in compliance with Plaintiff's preferred WCAG 2.0 standard, and commits to monitoring technological developments in the future to ensure that visually-impaired individuals have equal access to the Website.  On this record, Defendant has met the stringent showing required by the Supreme Court's mootness precedents.  The Court accordingly lacks subject matter jurisdiction to consider Plaintiff's claims."

Indeed, the instant matter is akin to *Diaz* and *Guglielmo*.  Ms. Wolken's declaration establishes (1) that Second Story is deeply committed to accessibility regarding its Website, (2) has resolved the issues it could identify that relate to Plaintiffs' allegations, and (3) has made

further commitments to ensuring the accessibility of the Website and compliance with the WCAG. (Ex. B, ¶¶5-11, 14).

Accordingly, no basis for Plaintiffs' Complaint exists. "A plaintiff seeking to bring a lawsuit in federal court must establish that the court has subject matter jurisdiction over the action." *Yusim v. United States Department of Housing and Urban Development*, 409 F.Supp.3d 125, 128 (E.D.N.Y. Mar. 28, 2018). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013). To that end, Second Story has shown that the Website is accessible to screen readers, the case is moot and the Court lacks subject matter jurisdiction over the matter.

**C. Plaintiffs Cannot Show An "Injury In Fact" Based On the Facts As They Did Not Plead With Specificity That They Will Revisit The Website Or Plead A Specific Product They Were Interested In Purchasing.**

To establish standing, Plaintiffs must show they are suffering or have suffered an "injury-in-fact," that is a "concrete, particularized, and actual or imminent . . ." invasion of their personal interests, fairly traceable to the challenged action, and which would be resolved by a judgment in his favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An "imminent" injury must be "certainly impending" to constitute an injury in fact; allegations of a possible future injury are insufficient. *See Clapper v. Amnesty Intern, USA*, 568 U.S. 398, 409 (2013). It is also important to note that a party may not establish an "injury-in-fact" by simply alleging a violation of a statute "divorced from any concrete harm;" the party must demonstrate an actual, concrete injury. *Spokeo v. Robins*, 136 S. Ct. 1540, 1547-49 (2016); *see also Calcano v. Swarovski North America Limited*, 36 F.4th 68, 75 (2d Cir. 2022) ("[T]he central inquiry is not whether a complaint pleads the magic words that the a plaintiff <u>intends to return</u>, but if, examined under the totality of

all relevant facts, that plaintiff plausibly alleges a real and immediate threat of injury") (emphasis added) (internal citations and quotations omitted); *see also Dominguez*, 2021 WL 918314, at *3 (in granting Defendant's motion to dismiss for lack of standing the court stated "Plaintiff's plans to return are indefinite. <u>That Plaintiff intends to '*immediately* purchase at least one store gift card' is conclusory and is not enough to raise a reasonable inference that he intends to visit Defendant's retail store in the future.</u>") (emphasis added).

Here, Plaintiffs fail to establish standing in an ADA action because they failed to allege an intent to return to the Website in the near future. Plaintiffs explicitly plead that they are "highly interested in purchasing the products offered by Defendant" and they "<u>intend to return</u> to the website in order to transact business there as soon as the accessibility barriers are cured". (Ex. A, ¶¶ 27, 30). The circumstances in the instant matter are the same as *Calcano* and *Dominguez*. Furthermore, this was identified by Defendant and pointed out to Plaintiffs in Defendant's pre-motion conference request, yet Plaintiffs refused the opportunity to amend the Complaint. (Dkt. 8, 11). Because Plaintiffs have not pled an injury with sufficient clarity, and because they have not alleged any future concrete plan to revisit the Website, Plaintiffs lack standing to bring a claim under the ADA.

Moreover, Plaintiffs do not even provide any details whatsoever as to what product they were trying to purchase or why they wanted to make these purchases. In August 20, 2021, Judge Andrew L. Carter Jr. of the United States District Court for the Southern District of New York held in an analogous website accessibility lawsuit that the plaintiff lacked standing to bring his ADA claim because "[i]t is not sufficient to claim that [Jaquez] suffered an injury in fact by casually going on the website with the intent of browsing and potentially purchasing a product without identifying the product that he was prevented from purchasing."

*See Jaquez v. Aqua Carpatica USA, Inc.* 20 CV 8487 (ALC), 2021 WL 3727094, at *6 (S.D.N.Y. Aug. 20, 2021); *see also id.* citing *Guglielmo v. Neb. Furniture Mart, Inc.*, 2020 U.S. Dist. LEXIS 238707, at *11 WL 7480619 (S.D.N.Y. Dec. 18, 2020) (Dismissing the plaintiff's complaint that he encountered barriers while attempting to access the defendant's website because he failed to identify the goods he intended to purchase on any of his visits to the website).

Likewise, in the instant matter, Plaintiffs explicitly pleads that their "main reason" was "to purchase certain goods and/or services" but do not plead any facts as to what items they were prevented from purchasing or why they wanted to purchase any of Defendant's products. (Ex. A, ¶¶ 4-6). Further, Plaintiffs have not properly pled an injury in fact with sufficient clarity of *any* actual product they were prevented from purchasing on Defendant's Website. (*Id.*). Nor have they articulated the product they desire to purchase in their wish to return to the Website at some future date. Accordingly, Plaintiffs cannot establish that they have suffered an "injury-in-fact", and thus cannot establish they have standing.

**D. Plaintiff's New York State Human Rights Law Claim Must Be Dismissed.**

In addition to their ADA claim, Plaintiffs also brings claims under the New York State Human Rights Law. This claim should also be dismissed under Rule12(b)(1) for lack of standing. New York state disability discrimination claims are governed by the same legal standards as federal ADA claims. *Rodal v. Anesthesia Grp. of Onondaga, P.C.,* 369 F.3d 113, 117 n.1 (2d Cir. 2004); *see also Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 26 (2d Cir. 2014).

## V.    CONCLUSION

WHEREFORE, This Court should dismiss Plaintiffs' Complaint for lack of standing because Plaintiffs have no actual knowledge of a barrier to access since they never attempted to contact Second Story's via email or its phone number, Second Story remedied all alleged ADA violations which renders it moot, and due to Second Story's failure to allege any future concrete plan to revisit the Website and Plaintiffs' failure to allege and demonstrate an injury in fact.  For these reasons, this Court should grant Second Story's Motion to Dismiss, dismiss the Complaint with prejudice, and grant such other, further relief as this Court deems just.

Dated: March 9, 2022                                Respectfully submitted,

_____

Adi Kanlic (Admitted *Pro Hac Vice*)
O'HAGAN MEYER, LLC
One East Wacker Drive
Suite 3400
Chicago, IL 60601
Ph: 312-422-6100
Fx: 312-422-6110
akanlic@ohaganmeyer.com
Attorney for Defendant, Second Story Promotions, Inc.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on March 9, 2023, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system:

CLARK LAW FIRM, PC
Gerald H. Clark, Esq.
fedada@clarklawnj.com
811 Sixteenth Avenue
Belmar, New Jersey 07719
Phone: (732) 443-0333
Fax (732) 894-9647

Pacific Trial Attorneys
4100 Newport Place, Suite 800
Newport Beach, California 92660

*Attorneys for Plaintiffs*

/s/ Adi Kanlic
Adi Kanlic, ARDC No. 6320888
O'Hagan Meyer LLC
One East Wacker Drive, Suite 3400
Chicago, Illinois  60601
312.422.6100 –T
312.422.6110 – F
akanlic@ohaganmeyer.com