**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DOMINICK MARTIN, an individual, and
JOHN PANARESE, an individual,

        Plaintiffs,

    v.

SECOND STORY PROMOTIONS, INC.,

        Defendant.

Case No. 1:22-cv-10438-MKV

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**

---

## TABLE OF CONTENTS

I.    ARGUMENT ...............................................................................................1

A.    Applicable Legal Standard...................................................................1

B.    A Broad View of Constitutional Standing in This Civil Rights Case Is
Required by Supreme Court Precedent...................................................2

C.    Plaintiffs Have Sufficiently Pled that They Suffered an Intangible
"Concrete Injury" Resulting From Defendant's Discrimination Against
Them. ..............................................................................................2

1.    Defendant Ignores that the Second Circuit Has Held that the Injury
in Fact Requirement Is a "Low Threshold". .................................2

2.    The Complaint Alleges Past Injury.............................................3

3.    Plaintiffs Have Alleged a Dignitary Injury Caused by Defendant's
ADA Violations Against Them. .................................................3

4.    Plaintiffs' Status as Testers Does Not Deprive Them of
Constitutional Standing to Sue..................................................5

a.    The Second Circuit Has Expressly Held that a Disabled
Plaintiff's Status as a "Tester" Does Not Deprive an
Individual of Standing. ..................................................5

D.    The Complaint Sufficiently Alleged a Likelihood of Future Harm to
Obtain Injunctive Relief. ....................................................................6

1.    It Is Reasonable to Infer that the Discriminatory Treatment Shall
Continue Because the Website Continues to Contain Accessibility
Barriers...............................................................................7

2.    It Is Reasonable to Infer that Plaintiffs Intended to Return to the
Website. ..............................................................................8

3.    The Fact that Plaintiffs Are Testers Supports Their Likelihood of
Returning To Defendant's Website. ..........................................12

4.    Plaintiffs Are Not Required to Plead the Products They Were
Interested in Purchasing or Produce Evidence on This Precise Issue
in Response to Defendant's Motion...........................................13

5.    *Calcano v. Swarovski North America Ltd.* Is Distinguishable..................15

E.    Defendant's Reliance Upon a Telephone or Email Accommodation Fails
to Comply with the DOJ's Regulation..................................................16

1.    *Castillo v. John Gore Organization, Inc.* Is Both Unpersuasive and
Distinguishable. ..................................................................18

F.     Defendant's Mootness Defense Is Premature to Resolve as a Matter of Law Given the Evidentiary Record..................................................................20

     1.     This Court's Decision in *Hecht v. Magnanni Inc.* Is Directly on Point Because the Parties Have Submitted Conflicting Evidence Regarding Whether the Website Barriers Continue to Exist. ....................21

     2.     *Diaz v. Kroger Co.* and *Guglielmo v. Nebraska Furniture Mart, Inc.* Are Both Distinguishable....................................................................22

II.     CONCLUSION.............................................................................................................24

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Federal Cases**

*Amidax Trading Group v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011)................................................................................14

*Andrews v. Blick Art Materials, LLC*,
   268 F. Supp. 3d 381 (E.D.N.Y. 2017) (Weinstein, J.)...........................................11

*Bayer v. Neiman Marcus Group, Inc.*,
   861 F.3d 853 (9th Cir. 2017) ................................................................................4

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................13, 14

*Bernstein v. City of New York*,
   621 Fed. Appx. 56 (2d Cir. 2015).........................................................................7

*Brooke v. A-Ventures, LLC*,
   No. 2:17 Civ. 2868 (HRH), 2017 WL 5624941 (D. Ariz. Nov. 22, 2017)............22

*Brooks v. Lola & Soto Bus. Group, Inc.*,
   2022 WL 616798 (E.D. Cal. Mar. 2, 2022) ..........................................................22

*Calcano v. Swarovski North America Ltd.*,
   36 F.4th 68 (2d Cir. 2022) .............................................................................15, 16

*Camacho v. Vanderbilt Univ.*,
   2019 WL 6528974 (S.D.N.Y. Dec. 4, 2019) (Failla, J.) ....................................8, 9

*Camarillo v. Carrols Corp.*,
   518 F.3d 153 (2d Cir. 2008)..................................................................................7

*Carparts Distribution Ctr., Inc. v. Automotive Wholesalers Assoc. of New
   England, Inc.*,
   37 F.3d 12 (1st Cir. 1994)....................................................................................10

*Carter v. HealthPort Technologies, LLC*,
   822 F.3d 47 (2d Cir. 2016)...................................................................................15

*Castillo v. John Gore Organization, Inc.*,
   2019 WL 6033088 (E.D.N.Y. Nov. 14, 2019)..........................................18, 19, 20

*Chalas v. Barlean's Organic Oils, LLC*,
   2022 WL 17156838 (S.D.N.Y. Nov. 22, 2022) (McMahon, J.) ...................... *passim*

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
631 F.3d 939 (9th Cir. 2011) (en banc) .................................................................3

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ...............................................................................................1

*Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*,
867 F.3d 1093 (9th Cir. 2017) ..............................................................................6

*Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.à.r.l.*,
790 F.3d 411 (2d Cir. 2015).................................................................................15

*Del-Orden v. Bonobos, Inc.*,
2017 WL 6547902, at *9 (S.D.N.Y. Dec. 20, 2017) (Engelmayer, J.)..............11, 22

*Diaz v. Kroger Co.*,
2019 WL 2357531 (S.D.N.Y. June 4, 2019) (Failla, J.) ...........................22, 23, 24

*Dominguez v. Banana Republic, LLC*,
-- F. Supp. 3d –, 2020 WL 1950496 (S.D.N.Y. Apr. 23, 2020) (Woods, J.) ...........11

*Dominguez v. New York Equestrian Center, Ltd.*,
2020 WL 5796275 (S.D.N.Y. Sept. 28, 2020) (Nathan, J.)......................................11

*Dominguez v. Taco Bell Corp.*,
- F. Supp. 3d -, 2020 WL 3263258, at *5 (S.D.N.Y. June 17, 2020) (Schofield,
J.)........................................................................................................................11

*Doran v. 7-Eleven, Inc.*,
524 F.3d 1034 (9th Cir. 2008) ...............................................................................2

*Federal Election Comm'n v. Cruz*,
142 S. Ct. 1638 (2022).........................................................................................6

*Feltenstein v. City of New Rochelle*,
254 F. Supp. 3d 647 (S.D.N.Y. 2017).................................................................22

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000)......................................................................................1, 21

*Griffin v. Department of Labor Federal Credit Union*,
912 F.3d 649 (4th Cir. 2019) ........................................................................2, 3, 4

*Guglielmo v. Nebraska Furniture Mart, Inc.*,
2020 WL 7480619 (S.D.N.Y. Dec. 18, 2020) (Failla, J.) ............................... *passim*

*Harty v. Burlington Coat Factory of Penn., L.L.C.*,
2011 WL 2415169 (E.D. Pa. June 16, 2011) .........................................................5

*Harty v. Nyack Motor Hotel Inc.*,
   2020 WL 1140783 (S.D.N.Y. Mar. 9, 2020) (Karas, J.)........................................................11

*Harty v. West Point Realty, Inc.*,
   28 F.4th 435 (2d Cir. 2022) ...........................................................................................5, 6, 15

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982).............................................................................................................5, 6

*Haynes v. Hooters of Am., LLC*,
   893 F.3d 781 (11th Cir. 2018) ...............................................................................................22

*Hecht v. Magnanni Inc.*,
   2022 WL 974449 (S.D.N.Y. Mar. 31, 2022) (Vyskocil, J.) ...................................................21

*Houston v. Marod Supermarkets, Inc.*,
   733 F.3d 1323 (11th Cir. 2013) ...................................................................................*passim*

*Jaquez v. Aqua Carpatica USA, Inc.*,
   2021 WL 3727094 (S.D.N.Y. 2021) (Carter, J.)....................................................................14

*John v. Whole Foods Mkt. Group, Inc.*,
   858 F.3d 732 (2d Cir. 2017)....................................................................................................3

*Kreisler v. Second Ave. Diner Corp.*,
   731 F.3d 184 (2d Cir. 2013).........................................................................................*passim*

*Kyles v. J.K. Guardian Sec. Servs.*,
   222 F.3d 289 (7th Cir. 2000) .................................................................................................12

*Langer v. Kiser*,
   57 F.4th 1085 (9th Cir. 2023) ..................................................................................................5

*Laufer v. Acheson Hotels, LLC*,
   50 F.4th 259, 268-70, 272-75 (1st Cir. 2022), *petition for cert. filed*, No. 22-
   429 (U.S. Nov. 8, 2022)...........................................................................................................5

*Laufer v. Arpan LLC*,
   29 F.4th 1268 (11th Cir. 2022) (Jordan, J., concurring) ......................................................5, 6

*Loadholt v. Shirtspace*,
   2023 WL 2368972 (S.D.N.Y. Mar. 6, 2023) (Carter, J.)...................................................9, 11

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)................................................................................................1, 12, 16

*Markett v. Five Guys Enterprises LLC*,
No. 17 Civ. 788 (KBF), 2017 WL 5054568 (S.D.N.Y. July 21, 2017) (Forrest, J.) .................................................................................................................22

*Molski v. M.J. Cable, Inc.*,
481 F.3d 724 (9th Cir. 2007) ................................................................................4

*Monge v. 405 Hotel LLC*,
2021 WL 982866, at *9 (E.D.N.Y. Feb. 24, 2021) (Lindsay, Mag. J.), *report and recommendation adopted*, 2021 WL 980870 (E.D.N.Y. Mar. 15, 2021) (Feuerstein, J.) ...................................................................................................22

*Murphy v. Nissan Motor Corp. in U.S.A.*,
650 F. Supp. 922 (E.D.N.Y. 1987) .......................................................................19

*National Fed'n of the Blind v. Scribd Inc.*,
97 F. Supp. 3d 565 (D. Vt. 2015) ........................................................................11

*National Fed'n of Blind v. Target Corp.*,
582 F. Supp. 2d 1185 (N.D. Cal. 2007) ...............................................................22

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ........................................................................................7, 13

*Paguada v. Athena Allergy, Inc.*,
No. 21 Civ. 1245 (KPF) (S.D.N.Y. Feb. 22, 2022) (Failla, J.) ..............................11

*Pallozzi v. Allstate Life Ins. Co.*,
198 F.3d 28 (2d Cir. 1999) ........................................................................9, 10, 11

*Panzica v. Mas–Maz, Inc.*,
No. 05–CV–2595, 2007 WL 1732123 (E.D.N.Y. June 11, 2007) ..........................19

*Perdum v. Forest City Ratner Cos.*,
174 F. Supp. 3d 706 (E.D.N.Y. 2016), *aff'd*, 677 Fed. Appx. 2 (2d Cir. 2017) ..................19

*PGA Tour, Inc. v. Martin*,
532 U.S. 661 (2001) ..............................................................................................4

*Quezada v. U.S. Wings, Inc.*,
2021 WL 5827437 (S.D.N.Y. Dec. 7, 2021) .......................................................8, 9

*Raines v. Byrd*,
521 U.S. 811 (1997) ............................................................................................12

*Romero v. 88 Acres Food, Inc.*,
580 F. Supp. 3d 9 (S.D.N.Y. 2022) (Wood, J.) ....................................................11

*Rosa v. 600 Broadway Partners, LLC*,
  175 F. Supp. 3d 191 (S.D.N.Y. 2016) (Gardephe, J.)................................................2

*Sanchez v. NutCo, Inc.*,
  2022 WL 846896 (S.D.N.Y. Mar. 22, 2022) (Oetken, J.) .......................................9

*Sanderson v. Horse Cave Theatre 76*,
  881 F. Supp. 2d 493 (S.D.N.Y. 2012) (Fox, Mag. J.).............................................14

*Shaver v. Independent Stave Co.*,
  350 F.3d 716 (8th Cir. 2003) ...................................................................................4

*Slade v. Life Spectacular, Inc.*,
  2022 WL 17542029 (S.D.N.Y. Dec. 5, 2022) (Carter, J.) ...................................9, 11

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)..........................................................................................1, 5, 6

*Sullivan v. Study.com LLC*,
  No. 18 Civ. 1939 (JPO), 2019 WL 1299966 (S.D.N.Y. Mar. 21, 2019) ...............21

*Tavarez v. Moo Organic Chocolates, LLC*,
  2022 WL 3701508 (S.D.N.Y. Aug. 26, 2022) (Caproni, J.)...................................11

*Thorne v. Boston Market Corp.*,
  2020 WL 3504178 (S.D.N.Y. June 29, 2020) (Abrams, J.) ...................................11

*Thorne v. Formula 1 Motorsports, Inc.*,
  2019 WL 6916098 (S.D.N.Y. Dec. 19, 2019) (Oetken, J.)....................................11

*Tourgeman v. Collins Financial Servs., Inc.*,
  755 F.3d 1109 (9th Cir. 2014) .................................................................................6

*Trafficante v. Metro. Life Ins. Co.*,
  409 U.S. 205 (1972).................................................................................................2

*United States v. L.A. Tucker Truck Lines*,
  344 U.S. 33 (1952)............................................................................................18, 19

*Walters v. Fischer Skis U.S., LLC*,
  2022 WL 3226352 (S.D.N.Y. Aug. 10, 2022) (Kahn, J.) ........................................8

*Walters v. Simply Skinny Ties, LLC*,
  2020 WL 7248346 (N.D.N.Y. Dec. 9, 2020)...........................................................22

*Warth v. Seldin*,
  422 U.S. 490 (1975).......................................................................................11, 12, 16

*Webster v. Fall,*
    266 U.S. 507 (1925) ............................................................................................... 19

*Weekes v. Outdoor Gear Exchange, Inc.,*
    2023 WL 2368989 (S.D.N.Y. Mar. 6, 2023) (Ramos, J.) .............................. *passim*

*Winegard v. Crain Communications, Inc.,*
    2021 WL 1198960 (S.D.N.Y. Mar. 30, 2021) (Nathan, J.) ...................................... 11

*Wu v. Jensen-Lewis Co.,*
    345 F. Supp. 3d 438 (S.D.N.Y. 2018) .............................................................. 21, 22

**State Cases**

*Nicholls v. Holiday Panay Marina, L.P.,*
    173 Cal. App. 4th 966 (2009) ................................................................................... 4

*Thurston v. Midvale Corp.,*
    39 Cal. App. 5th 634 (2019) ................................................................................... 17

**U.S. Constitution**

Article III ........................................................................................................... 4, 5, 12

**Federal Statutes**

42 U.S.C.
    § 12101(a)(1) ........................................................................................................ 4
    § 12101(b) ............................................................................................................. 4
    § 12181(7) ........................................................................................................... 10
    § 12181(7)(F) ...................................................................................................... 10
    § 12182(a) ............................................................................................................. 9
    § 12182(b)(2)(A)(iii) ........................................................................................... 17
    Americans with Disabilities Act of 1990 ....................................................... *passim*
    Title III of the ADA ........................................................................................ *passim*

**Federal Regulations**

28 C.F.R. § 36.303 ................................................................................................... 17

28 C.F.R. § 36.303(c)(1)(ii) .............................................................................. 17, 18

**Federal Rules**

Federal Rule of Civil Procedure
    Rule 8(a) .............................................................................................................. 13
    Rule 9 ................................................................................................................... 13
    Rule 9(b) ........................................................................................................ 13, 14

Rule 12(b)(1)................................................................................................................14, 15

Rule 12(b)(6)....................................................................................................................13

**Other Authorities**

13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. &
    Proc. Juris. (3d ed. Apr. 2022 Update)
    § 3531.5......................................................................................................................6
    n.61............................................................................................................................6
    n.70............................................................................................................................6
    n.73............................................................................................................................6

https://www.forbes.com/sites/oliverwyman/2019/10/02/online-travel-agencies-
    need-to-reinvent-themselves-to-fend-off-rising-costs-and-
    google/#165d1dbc665f (last visited Mar. 20, 2023)...............................................10

# I.    ARGUMENT

## A.    Applicable Legal Standard

The Supreme Court's cases establish that the "irreducible constitutional minimum" of standing consists of three elements.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  A plaintiff must demonstrate that he suffers the threat of an "injury in fact" that is concrete and particularized; the threat must be actual or imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.  *Lujan*, 504 U.S. at 560-61.  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"  *Id.* at 561.

When an injunction is sought, the moving party must also show a continuing threat of injury.  *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) ("Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury . . . .").

"In the ADA context, standing exists where '(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) *it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of [defendant's business] to plaintiff's home, that plaintiff intended to return to the subject location.*"  *Chalas v. Barlean's Organic Oils, LLC*, 2022 WL 17156838, at *2 (S.D.N.Y. Nov.

22, 2022) (McMahon, J.) (emphasis added) (quoting *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013)).

**B.    A Broad View of Constitutional Standing in This Civil Rights Case Is Required by Supreme Court Precedent.**

A broad view of constitutional standing is required by Supreme Court binding precedent in civil rights cases such as the instant action.  "The Supreme Court has instructed [courts] to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039-40 (9th Cir. 2008) (citing *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)); *Guglielmo v. Nebraska Furniture Mart, Inc.*, 2020 WL 7480619, at *3 (S.D.N.Y. Dec. 18, 2020) (Failla, J.) (citing *Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 199 (S.D.N.Y. 2016) (Gardephe, J.)).

Indeed, in *Griffin v. Department of Labor Federal Credit Union*, 912 F.3d 649 (4th Cir. 2019), the Fourth Circuit re-affirmed this proposition of law by stating, "It is important that we do not take a cramped view of standing in civil rights cases, lest we impair the remedial purpose Congress had in mind when enacting civil rights statutes."  *Griffin*, 912 F.3d at 653 (noting that the Fourth Circuit was taking a "broad view of [plaintiff's] complaint").

Thus, the same "generous construction" applied in *Trafficante*, 409 U.S. at 212, should be applied in the Title III ADA context at issue here.

**C.    Plaintiffs Have Sufficiently Pled that They Suffered an Intangible "Concrete Injury" Resulting From Defendant's Discrimination Against Them.**

**1.    Defendant Ignores that the Second Circuit Has Held that the Injury in Fact Requirement Is a "Low Threshold".**

Defendant challenges whether Plaintiff has sufficiently pled the injury in fact requirement.  (Def.'s Mem. at 20-22.)  Defendant conveniently omits to mention, however, that the Second Circuit has repeatedly held that the injury in fact element is a "low threshold."

*Chalas v. Barlean's Organic Oils, LLC*, 2022 WL 17156838, at *2 (S.D.N.Y. Nov. 22, 2022) (McMahon, J.) (citing *John v. Whole Foods Mkt. Group, Inc.*, 858 F.3d 732, 736 (2d Cir. 2017)). Defendant's omission speaks volumes regarding the frailty of its analysis.

### 2.    The Complaint Alleges Past Injury.

The Complaint alleges past injury under the ADA to both Plaintiffs.  (Compl. ¶¶ 4-5; 25-30.)  Thus, the first factor in the *Kreisler* three-part test has been met.  Defendant fails to dispute this.

### 3.    Plaintiffs Have Alleged a Dignitary Injury Caused by Defendant's ADA Violations Against Them.

The concrete injury that Plaintiffs have alleged in the Complaint is an injury to their dignity or a dignitary injury that all civil rights litigants encounter when they either personally encounter discrimination[1] against their protected class or are deterred by it.

In *Griffin v. Department of Labor Federal Credit Union*, *supra*, the Fourth Circuit held:

> "Dignitary harms or 'stigmatic injur[ies],' while not tangible, may be sufficiently concrete to constitute injury in fact, and therefore may be constitutionally protected by statute."

*Griffin*, 912 F.3d at 653 (internal citation omitted).  The Fourth Circuit further explained that the plaintiff therein "has alleged just such a dignitary harm," that "dignitary harms are readily inferred by allegations of unequal treatment," and "Congress, in enacting the ADA, intended in part to protect people with disabilities against stigmatic injury."  *Griffin*, 912 F.3d at 654; *id.* at 657 ("I agree with my friends that either a ***dignitary harm***, or a harm in the form of the denial of

---

[1] "The concept of 'discrimination' under the ADA does not extend only to obviously exclusionary conduct . . . . Rather, the ADA proscribes more subtle forms of discrimination ... that interfere with disabled individuals' 'full and equal enjoyment' of places of public accommodation."  *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (en banc).  "[The ADA's] passage was premised on Congress's finding that discrimination against the disabled is 'most often the product, not of invidious animus, but rather of thoughtlessness and indifference,' of 'benign neglect,' and of 'apathetic attitudes rather than affirmative animus.'"  *Id.* at 944-45.

access to information, can confer Article III standing under the Americans with Disabilities Act of 1990") (King, J., concurring in the judgment) (emphasis added).  In support, *Griffin* cited approval *Shaver v. Independent Stave Co.*, 350 F.3d 716 (8th Cir. 2003), which, in turn, held:

> "[T]he mere fact of discrimination offends the ***dignitary interest*** that the statute[ is] designed to protect, regardless of whether the discrimination worked any direct economic harm to the plaintiffs."

*Shaver*, 350 F.3d at 724 (emphasis added) (stating that "[the] language [of the ADA] suggests that Congress was trying to protect a dignitary interest with the ADA"); *see also Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 733 (9th Cir. 2007) ("One need not be a client or customer of a public accommodation to feel the sting of its discrimination."); *Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853, 874 (9th Cir. 2017) (recognizing "the ***dignitary interest*** at stake when an action alleges a violation of a statute intended to safeguard civil rights") (emphasis added); *Nicholls v. Holiday Panay Marina, L.P.*, 173 Cal. App. 4th 966, 970 (2009) ("A broad interpretation of the [ADA] statute allows the ADA to enhance self-autonomy and ***human dignity*** in day to day living.") (emphasis added).

A disabled person's dignitary interest is precisely what Congress intended to protect in enacting the ADA and other federal non-discrimination statutes.  Congress enacted the ADA, in part, "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities . . . ."  42 U.S.C. § 12101(b).  Congress found that disabilities have precluded many people with disabilities from their "right to fully participate in ***all aspects of society***."  42 U.S.C. § 12101(a)(1) (emphasis added); *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001) ("Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals.").  An ADA violation, by definition, implicates a

disabled individual's dignitary interest, and "*additional* harm" is unnecessary.  *Spokeo*, 578 U.S. at 342 (emphasis in original).

Indeed, if an ADA plaintiff who sues under Title III of the ADA cannot allege and prove an intangible injury to her dignity when encountering disability discrimination, how can ***any*** plaintiff suing under Title III of the ADA ever establish Article III standing to sue?

4. **Plaintiffs' Status as Testers Does Not Deprive Them of Constitutional Standing to Sue.**

a. **The Second Circuit Has Expressly Held that a Disabled Plaintiff's Status as a "Tester" Does Not Deprive an Individual of Standing.**

Although Defendant correctly points out that Plaintiffs are testers,[2] (Def.'s Mem. at 6), as alleged in the Complaint, (Compl. ¶ 16), Plaintiffs' status as testers does not deprive them of constitutional standing to sue in the instant action.  Indeed, the Second Circuit itself expressly held in *Harty v. West Point Realty, Inc.*, 28 F.4th 435 (2d Cir. 2022), "The law is clear that testers can have standing."  *Harty*, 28 F.4th at 444 n.3; *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982) ("That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of [the statute prohibiting unlawful misrepresentations].");  *id.* at 373 ("As we have previously recognized, '[t]he actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . .' ' ");  *Langer v. Kiser*, 57 F.4th 1085, 1093 (9th Cir. 2023); *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 268-70, 272-75 (1st Cir. 2022) (citing *Havens*), *petition for cert. filed*, No. 22-429 (U.S. Nov. 8, 2022); *Laufer v. Arpan LLC*, 29 F.4th 1268, 1277-82 (11th Cir. 2022) (Jordan, J., concurring) ("*Havens Realty* is still on the books, and

---

[2] "Testers are . . . individuals with disabilities who visit places of public accommodation to determine their compliance with Title III."  *Harty v. Burlington Coat Factory of Penn., L.L.C.*, 2011 WL 2415169, at *1 n.5 (E.D. Pa. June 16, 2011).

we are bound to apply it here."); *Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1101-02 (9th Cir. 2017); *Tourgeman v. Collins Financial Servs., Inc.*, 755 F.3d 1109, 1115-16 (9th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1331 (11th Cir. 2013) (citing *Havens*).

*Havens* continues to be recognized as supporting tester standing even by the U.S. Supreme Court itself.[3]  *See Federal Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1647 (2022) (citing *Havens*) (rejecting the recognition of an exception to traceability for injuries that a party purposely incurs).

Finally, as a well-recognized treatise on federal practice has explained, "Self-inflicted injury may seem a suspicious basis for standing.  It is clear, however, that no rigid lines are drawn on this basis."  13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. & Proc. Juris. § 3531.5 (3d ed. Apr. 2022 Update) ("Wright, Miller & Cooper").[4]  That treatise further explained, "Standing is not defeated merely because the plaintiff has in some sense contributed to his own injury."  *Id.* § 3531.5 & n.70.  "A self-inflicted injury defeats standing only if the injury is ***so completely due to the plaintiff's fault as to break the causal chain***."  *Id.* at n.70 (emphasis added) (citation omitted); *Id.* at n.73 ("Standing is defeated only if it is concluded that the injury is ***so completely due to the plaintiff's own fault as to break the causal chain***.") (emphasis added).  Notably, such treatise cited in support as illustrative *Havens*. Wright, Miller & Cooper, *supra*, § 3531.5 & n.61.

### D.     The Complaint Sufficiently Alleged a Likelihood of Future Harm to Obtain Injunctive Relief.

---

[3] Justice Thomas's concurring opinion in *Spokeo* expressly cited *Havens*.  *See Spokeo*, 578 U.S. at 348 (Thomas, J., concurring).

[4] *Harty* characterized the Wright, Miller & Cooper treatise as amongst the "leading treatises on federal civil procedure."  *Harty*, 28 F.4th at 442.

The Complaint sufficiently alleged a likelihood of future harm to obtain injunctive relief. "Intent to return is a 'highly fact-sensitive inquiry.'" *Guglielmo v. Nebraska Furniture Mart, Inc.*, 2020 WL 7480619, at *5 (S.D.N.Y. Dec. 18, 2020) (Failla, J.) (quoting *Bernstein v. City of New York*, 621 Fed. Appx. 56, 59 (2d Cir. 2015) (citing *Kreisler*, 731 F.3d at 187-88 and *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008)).

1.    **It Is Reasonable to Infer that the Discriminatory Treatment Shall Continue Because the Website Continues to Contain Accessibility Barriers.**

It is reasonable to infer that the discriminatory treatment shall continue. Here, the Complaint alleges that: (1) Plaintiffs attempted to use Defendant's Website in either June 2022 (Plaintiff Martin) or October 2022 (Plaintiff Panarese), which preceded the filing of Plaintiffs' action on December 9, 2022, but encountered communication barriers on Defendant's Website, (Compl. ¶¶ 4, 5, 26, 29); and (2) barriers continue to exist on Defendant's Website even after Defendant was notified by Plaintiffs' counsel about the existence of the barriers on or about July 21, 2022, (Compl. ¶ 52); (Ferrell Decl. ¶¶ 2-3 & Exs. 1-2).

Moreover, although Defendant has implied that it has remedied each of the barriers alleged by Plaintiffs by invoking the mootness defense, Plaintiffs have concurrently submitted admissible evidence confirming that Defendant's Website continues to contain barriers hindering its use by blind individuals. (Jones Decl. ¶¶ 3-4 & Ex. 1.) The Court has relied upon mere allegations that a defendant has failed to remove access barriers from a website as sufficient to satisfy the second prong of the *Kreisler* test. *Chalas*, 2022 WL 17156838, at *3; *Weekes v. Outdoor Gear Exchange, Inc.*, 2023 WL 2368989, at *3 (S.D.N.Y. Mar. 6, 2023) (Ramos, J.).

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, ***if unaccompanied by any continuing, present adverse effects***." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) (emphasis added). The Complaint

here alleges that Plaintiffs have been deterred by the ongoing discriminatory barriers that continue to exist on Defendant's Website.  (Compl. ¶¶ 6, 31-32.)  Thus, the Complaint sufficiently pleads a threat of future injury that is "real and immediate."  *Houston*, 733 F.3d at 1337.

Under these circumstances, Plaintiffs have amply demonstrated that the discriminatory treatment shall continue, which satisfies the second prong of the *Kreisler* three-part test.

If the Court would like Plaintiff to allege the continuing existence of accessibility barriers on Defendant's Website via a first amended complaint, then leave to amend should be granted.

### 2.    It Is Reasonable to Infer that Plaintiffs Intended to Return to the Website.

"[A] plaintiff bringing an ADA claim involving an online forum need only plead facts sufficient to enable a court to 'infer [that] the discriminatory treatment will continue when [p]laintiff ***visits the website again***.'"  *Weekes v. Outdoor Gear Exchange, Inc.*, 2023 WL 2368989, at *3 (S.D.N.Y. Mar. 6, 2023) (Ramos, J.) (emphasis added) (quoting *Walters v. Fischer Skis U.S., LLC*, 2022 WL 3226352, at *4 (S.D.N.Y. Aug. 10, 2022) (Kahn, J.)).  In other words, unlike a physical barrier case in which a plaintiff alleges that she was discriminated against under the ADA based on a physical barrier located at a brick-and-mortar physical location, in a website barrier case, "the standard to establish standing is ***slightly less burdensome***."  *Weekes*, 2023 WL 2368989, at *3 (emphasis added) (quoting *Quezada v. U.S. Wings, Inc.*, 2021 WL 5827437, at *3 (S.D.N.Y. Dec. 7, 2021)).  "The plaintiff need only establish 'a reasonable inference that he intended to return to the [w]ebsite.'"  *Weekes*, 2023 WL 2368989, at *3 (quoting *Quezada*, 2021 WL 5827437, at *3 (quoting *Camacho v. Vanderbilt Univ.*, 2019 WL 6528974, at *11 (S.D.N.Y. Dec. 4, 2019) (Failla, J.))).

The Complaint alleges that:  (1) Plaintiffs were both "highly interested in purchasing the products offered by Defendant," (Compl. ¶¶ 27, 30); and (2) Plaintiffs intend to return to the

Website as soon as the accessibility barriers contained therein are remediated, (Compl. ¶¶ 27, 30). Plaintiffs intend to use Defendant's Website if it became accessible. (Compl. ¶¶ 6, 27, 30, 34.) Such allegations suffice. *See Quezada*, 2021 WL 5827437, at *4 ("[Plaintiff] does specifically state his intent to return to the website if accessibility issues were remediated."); *Sanchez v. NutCo, Inc.*, 2022 WL 846896, at *3 (S.D.N.Y. Mar. 22, 2022) (Oetken, J.) (finding blind plaintiff's intent to return to website sufficiently pled by plaintiff pleading his intention to return to website once the barriers were resolved) (citing *Quezada*); *Slade v. Life Spectacular, Inc.*, 2022 WL 17542029, at *3 (S.D.N.Y. Dec. 5, 2022) (Carter, J.) ("Plaintiff's intent to return to the website is … sufficiently pleaded in the amended complaint, as [plaintiff] states that she 'maintains a strong desire to purchase the customized skincare products offered by Defendant"); *Loadholt v. Shirtspace*, 2023 WL 2368972, at *3 (S.D.N.Y. Mar. 6, 2023) (Carter, J.) ("Plaintiff has satisfied the Second Circuit's requirements by specifying when he intends to return to the website (*i.e.*, when the alleged accessibility issues are remediated) and for what purpose (*i.e.*, to purchase the T-shirt he originally tried to buy). This is sufficient to evince Plaintiff's intent to return to the website for the standing analysis.").

Notably, Plaintiffs can easily re-visit the Website. *Quezada*, 2021 WL 5827437, at *4 ("websites are already easily accessible at any moment"); *Camacho v. Vanderbilt Univ.*, 2019 WL 6528974, at *10 (S.D.N.Y. 2019) (Failla, J.) ("Plaintiff … may easily return to the Website should it be made accessible."). Thus, any geographic limitation to standing for injunctive relief that would ordinarily apply to a brick-and-mortar store context is irrelevant here.

In *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28 (2d Cir. 1999), the Second Circuit held, "Title III's mandate that the disabled be accorded 'full and equal enjoyment of the goods, [and] services. . . of any place of public accommodation,' [42 U.S.C. § 12182(a)], suggests to us that

the statute was meant to guarantee them more than mere physical access." *Id.* at 32.  In support,

*Pallozzi* cited with approval the First Circuit's landmark decision in *Carparts Distribution Ctr.,*

*Inc. v. Automotive Wholesalers Assoc. of New England, Inc.*, 37 F.3d 12 (1st Cir. 1994), whereby

the First Circuit held:

> "By including "travel service" among the list of services considered "public accommodations," ***Congress clearly contemplated that "service establishments" include providers of services which do not require a person to physically enter an actual physical structure.***  Many travel services conduct business by telephone or correspondence without requiring their customers to enter an office in order to obtain their services.  Likewise, one can easily imagine the existence of other service establishments conducting business by mail and phone without providing facilities for their customers to enter in order to utilize their services.  ***It would be irrational to conclude that persons who enter an office to purchase services are protected by the ADA, but persons who purchase the same services over the telephone or by mail are not.  Congress could not have intended such an absurd result.***
>      ...
> Neither Title III nor its implementing regulations make any mention of physical boundaries or physical entry.  Many goods and services are sold over the telephone or by mail with customers never physically entering the premises of a commercial entity to purchase the goods or services.  To exclude this broad category of businesses from the reach of Title III and limit the application of Title III to physical structures which persons must enter to obtain goods and services would run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges and advantages, available indiscriminately to other members of the general public."

*Carparts*, 37 F.3d at 19-20 (emphasis added).  Thus, the First Circuit correctly recognized that

the 12 expansive categories identified as "public accommodations" in 42 U.S.C. § 12181(7) were

not all physical places.  The list of almost 70 places includes "travel service,"[5] or other "service

establishment."  42 U.S.C. § 12181(7)(F).  *Pallozzi* has been broadly interpreted to allow for

Title III actions to be maintained against inaccessible commercial websites even without a so-

---

[5] The First Circuit's analysis was prescient considering the sheer dominance of online travel agencies including Expedia, Inc. and others in the travel agency marketplace today. https://www.forbes.com/sites/oliverwyman/2019/10/02/online-travel-agencies-need-to-reinvent-themselves-to-fend-off-rising-costs-and-google/#165d1dbc665f (last visited Mar. 20, 2023) ("Booking Holdings and Expedia, the two biggest [online travel agencies], boast a combined market cap of more than $100 billion, comparable to the four largest US airlines combined.").

called "nexus" to a brick-and-mortar retail facility.[6] "Although standing in no way depends on

the merits of the plaintiff's contention that particular conduct is illegal, it often turns on the

**nature** and **source** of the claim asserted." *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (emphasis

---

[6] Indeed, the "vast majority" of judges in the Southern District of New York have issued decisions holding that commercial websites satisfy the ADA's "place of public accommodation" requirement even if not tethered to a physical location. *See, e.g.*, *Weekes v. Outdoor Gear Exchange, Inc.*, 2023 WL 2368989, at *5 (S.D.N.Y. Mar. 6, 2023) (Ramos, J.); *Loadholt v. Shirtspace*, 2023 WL 2368972, at *3 (S.D.N.Y. Mar. 6, 2023) (Carter, J.) ("I join the vast majority of courts within this district in holding that the ADA's protections do extend to commercial websites."); *Slade v. Life Spectacular, Inc.*, 2022 WL 17542029, at *3 (S.D.N.Y. Dec. 5, 2022) (Carter, J.) (same); *Chalas v. Barlean's Organic Oils, LLC*, 2022 WL 17156838, at *4-*6 (S.D.N.Y. Nov. 22, 2022) (McMahon, J.); *Paguada v. Athena Allergy, Inc.*, No. 21 Civ. 1245 (KPF) (S.D.N.Y. Feb. 22, 2022) (Failla, J.); *Tavarez v. Moo Organic Chocolates, LLC*, 2022 WL 3701508, at *1, *2 & n.2 (S.D.N.Y. Aug. 26, 2022) (Caproni, J.) ("The Court finds that websites are places of public accommodation as defined in the ADA.") (citing cases); *id.* at *3 ("Although websites are not specifically mentioned in the statute, the law's explicit purpose and the inclusion of providers that do not require physical entry into a location to access their goods and services indicate that websites are within the broad reach Congress intended Title III to have."); *Romero v. 88 Acres Food, Inc.*, 580 F. Supp. 3d 9, 20 (S.D.N.Y. 2022) (holding that interpretation of ADA "that people with disabilities are protected if they shop in-store at Whole Foods, but not if they shop online at Whole Foods" "would lead to an absurd result") (Wood, J.); *Winegard v. Crain Communications, Inc.*, 2021 WL 1198960, at *2 (S.D.N.Y. Mar. 30, 2021) (Nathan, J.); *Dominguez v. New York Equestrian Center, Ltd.*, 2020 WL 5796275, at *2 (S.D.N.Y. Sept. 28, 2020) (Nathan, J.); *Thorne v. Boston Market Corp.*, 2020 WL 3504178, at *7 (S.D.N.Y. June 29, 2020) (Abrams, J.) ("a number of courts in this district have held that private commercial websites that affect commerce are 'place[s] of public accommodation' under the ADA"); *Dominguez v. Taco Bell Corp.*, - F. Supp. 3d -, 2020 WL 3263258, at *5 (S.D.N.Y. June 17, 2020) (Schofield, J.) ("Some courts have found [websites that offer goods for sale] to be a place of public accommodation. These decisions state that a place of public accommodation need not be a physical space as long as it is a place where goods and services are provided."); *Dominguez v. Banana Republic, LLC*, -- F. Supp. 3d –, 2020 WL 1950496, at *7 (S.D.N.Y. Apr. 23, 2020) (Woods, J.) ("coupled with the word 'of,' the phrase 'place of public accommodation' most logically reads as referring to a space-figurative or not-that can provide the services of a public accommodation"); *id.* at *9 ("***courts in the Second Circuit have found that it would be absurd to exclude cyberspace from the ADA's mandate***.") (emphasis added); *Harty v. Nyack Motor Hotel Inc.*, 2020 WL 1140783, at *4 (S.D.N.Y. Mar. 9, 2020) (Karas, J.)("a handful of district courts in the Second Circuit have interpreted an analogous case, *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2d Cir. 1999), to imply that 'Title III extends to online fora offering goods and services'") (citing cases); *Thorne v. Formula 1 Motorsports, Inc.*, 2019 WL 6916098, at *2 (S.D.N.Y. Dec. 19, 2019) (Oetken, J.) ("Formula 1's website is a place of public accommodation."); *Del-Orden v. Bonobos, Inc.*, 2017 WL 6547902, at *9 (S.D.N.Y. Dec. 20, 2017) (Engelmayer, J.) (concluding that a website was a "place of public accommodation" because "interpretive tools strongly support construing the term 'public accommodation' to apply to commercial marketplaces, including on the Internet, whether or not these marketplaces take a conventional physical form"). Other district courts within the Second Circuit agree. *See, e.g.*, *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 387-98 (E.D.N.Y. 2017) (Weinstein, J.); *National Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 568-76 (D. Vt. 2015).

added); *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citing *Warth*)); *Kyles v. J.K. Guardian Sec. Servs.*, 222 F.3d 289, 294 (7th Cir. 2000) ("[W]hether a person has Article III standing to sue" under a federal statute "depends in great measure on the particular rights conferred by th[at] statute[].") (citing *Warth*).

### 3. The Fact that Plaintiffs Are Testers Supports Their Likelihood of Returning To Defendant's Website.

It is beyond dispute that Plaintiffs have both acted as a "tester" of Defendant's Website.[7] (Compl. ¶ 16.)   The mere fact that Plaintiffs are testers does not preclude them from demonstrating a "real and immediate" threat of future harm, which is necessary to obtain standing to sue to recover injunctive relief.   If anything, Plaintiffs' tester status supports their likelihood of returning to the Website to ensure Defendant's compliance with Title III of the ADA.

Defendant fails to appreciate the important guidance on this precise issue provided by the Eleventh Circuit's *Houston* decision.[8]   On the issue regarding the threat of *future* injury, *Houston* relied on: (1) the plaintiff's ADA testing as a factor weighing in favor of the likelihood of his return to the location of the ADA violation for another test,[9] 733 F.3d at 1340; (2) the plaintiff's

---

[7]  Given that the Eleventh Circuit in *Houston* affirmatively relied upon: (1) the plaintiff's ADA testing as a factor weighing in favor of the likelihood of his return to the location of the ADA violation for another test, *Houston*, 733 F.3d at 1340; and (2) the fact that the plaintiff's likelihood of suffering future injury was not contingent upon speculative events or events that were beyond the plaintiff's control, *id.* at 1337, Plaintiffs' status as a "tester" is relevant to whether they have standing in this case.

[8] *Houston* addressed two distinct issues.  "This appeal presents two issues: (1) whether Plaintiff Houston's tester motive behind his past and future visits precludes his having standing for this particular lawsuit under Title III of the ADA, and (2), if not, whether under the totality of the facts here Houston has shown a real and immediate threat of future injury."  *Houston*, 733 F.3d at 1329.

[9] "Given that ADA testing appears to be Houston's avocation or at least what he does on a daily basis, the likelihood of his return for another test of the Presidente Supermarket . . . is considerably greater than the *Lujan* plaintiffs' return to far away countries with unstable political situations."  *Houston*, 733 F.3d at 1340.

exposure to illegal conduct in the past,[10] *id.* at 1336; (3) the lack of remediation of the barriers, *id.* at 1337;[11] and (4) the fact that the plaintiff's likelihood of suffering future injury was not contingent upon speculative events or events that were beyond the plaintiff's control.[12] *Id.*

Thus, the Complaint sufficiently pleads a threat of future injury that is "real and immediate." *Houston*, 733 F.3d at 1337.

### 4.   Plaintiffs Are Not Required to Plead the Products They Were Interested in Purchasing or Produce Evidence on This Precise Issue in Response to Defendant's Motion.

Defendant contends that the Complaint should have alleged the specific products that Plaintiffs were interested in purchasing on Defendant's Website.  (Def.'s Mem. at 22.)   If Defendant seeks the specific details of what products Plaintiffs were interested in purchasing on Defendant's Website, Defendant can take discovery as to such details.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (stating that Rule 8(a) of Federal Rules of Civil Procedure "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support allegations).   Defendant's thinly-veiled attempt to apply a heightened pleading standard under Federal Rule of Civil Procedure 9(b) is improper here.  In addressing its plausibility legal standard on a Rule 12(b)(6) motion, the U.S. Supreme Court noted that "we do not apply any 'heightened' pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9[.]"  *Twombly*, 550 U.S. at 569 n.14.

---

[10] *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) ("Of course, past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury.").

[11] *Houston*, 733 F.3d at 1337 ("[T]here is a 100 percent likelihood that Plaintiff Houston will suffer the alleged injury again when he returns to the store.").

[12] "The likelihood of Houston suffering future injury thus is not contingent upon events that are speculative or beyond his control.  Rather, the cause of the injury continues to exist, and ***the likelihood of Houston encountering that cause in the future depends only on Houston's own volition***."  733 F.3d at 1337 (emphasis added).

Defendant's reliance upon *Jaquez v. Aqua Carpatica USA, Inc.*, 2021 WL 3727094 (S.D.N.Y. 2021) (Carter, J.) and *Guglielmo v. Nebraska Furniture Mart, Inc.*, 2020 WL 7480619, at *4 (Dec. 18, 2020) (Failla, J.), is misplaced.  *Jaquez* held, "It is not sufficient to claim that he suffered an injury in fact by casually going on the website with the intent of browsing and potentially purchasing a product without identifying the product that he was prevented from purchasing." *Jaquez*, 2021 WL 3727094, at *4.  In support, *Jaquez* relied solely upon *Guglielmo*, which stated that "Plaintiff does not identify the goods that he intended to purchase on any of his visits to the Website . . . ."  *Guglielmo*, 2020 WL 7480619, at *4. Significantly, neither *Jaquez* nor *Guglielmo* attempted to explain how or why their analysis comported with *Twombly* and the impropriety of applying a heightened pleading standard to circumstances whereby Rule 9(b) does not apply (like the instant action).  Nor did such decisions attempt to reconcile their analysis with binding Second Circuit precedent.  "On a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the non-conclusory factual allegations in the complaint, unless contradicted by evidence, are ***taken as true*** and all reasonable inferences drawn from those factual allegations are construed in favor of the plaintiff." *Sanderson v. Horse Cave Theatre 76*, 881 F. Supp. 2d 493, 502 (S.D.N.Y. 2012) (Fox, Mag. J.) (emphasis added) (citing *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).  The Complaint alleges that "the website sells/offers promotional products and related products for purchase," and that "[t]he main reason Plaintiff visited the website was to, *inter alia*, purchase products, goods and/or services."  (Compl. ¶¶ 4, 5.) Defendant has failed to submit ***any*** evidence contradicting Plaintiff's factual allegations.

Although Defendant relies upon extrinsic evidence, (Wolken Decl. ¶¶ 1-15; Kingett Decl. ¶¶ 1-11), for purposes of establishing either its mootness defense or its telephone service or

email service alternative accommodation defense, the Court should base its ruling solely on the allegations of the Complaint with respect to Plaintiff's intention to visit the Website to purchase products because Defendant's extrinsic evidence "does not controvert the material allegations of the complaint." *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022) (holding that a district court "is not invariably required to consider [extrinsic] evidence" in deciding a Rule 12(b)(1) motion challenging subject matter jurisdiction). *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (holding that even if the defendant submits affidavits on a 12(b)(1) motion, "the plaintiffs are entitled to rely on the allegations in the Pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing").

Because Defendant's extrinsic evidence does not controvert any material allegation in the Complaint *relating to Plaintiffs' intention to purchase products on the Website*, Defendant is effectively making a facial challenge to standing as to such precise issue. As such, the Court must accept as true all material facts alleged in the Complaint on this precise issue and draw all reasonable inferences in Plaintiffs' favor. *See Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.à.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015).

### 5.    *Calcano v. Swarovski North America Ltd.* Is Distinguishable.

Although Defendant relies heavily upon *Calcano v. Swarovski North America Ltd.*, 36 F.4th 68 (2d Cir. 2022) (2-1 decision), *Calcano* is distinguishable.

First, the majority opinion in *Calcano* is factually distinguishable because it involved a fact pattern involving the lack of Braille gift cards offered at brick-and-mortar retail stores allegedly patronized by visually-impaired persons in the past. *Calcano*, 36 F.4th at 72. As such, the panel majority applied the three-part test announced in *Kreisler*, 731 F.3d at 188, to assess the plaintiffs' standing to obtain injunctive relief. *Calcano*, 36 F.4th at 76 ("Plaintiffs' assertions

of proximity and prior visits are vague, lacking in support, and do not plausibly establish that Plaintiffs 'intended to return to the subject location'").  But, Plaintiffs have only alleged that Defendant's Internet website is inaccessible to them.  (Compl. ¶¶ 4-6.)  Thus, applying the third factor in *Kreisler* to the instant action in a literal manner to a brick-and-mortar physical location makes no sense here.

Second, *Calcano* did not purport to involve purported testers.  Indeed, the word "tester" is not set forth therein.  In contrast, Plaintiffs freely allege that they are "testers."  If anything, the fact that Plaintiffs are testers actually increases the likelihood that they will return to the Website to evaluate its accessibility after it is remediated by Defendant.  *Houston*, 733 F.3d at 1340 ("Given that ADA testing appears to be Houston's avocation or at least what he does on a daily basis, the likelihood of his return for another test of the Presidente Supermarket . . . is considerably greater than the *Lujan* plaintiffs' return to far away countries with unstable political situations.").  Notably, *Calcano* did not address or distinguish *Houston* in this regard.

Finally, Defendant conveniently omits to mention that *Calcano* is a split decision on the issue of standing.  *Calcano*, 36 F.4th at 78 (Lohier, J., concurring in the judgment) ("My colleagues in the majority affirm on the ground that the plaintiffs lack standing.  I disagree.").  Notably, Defendant ignores Judge Lohier's analysis entirely.  Such omission speaks volumes.  Notably, Judge Lohier's analysis of standing correctly points out that "Title III of the ADA does not limit claims to 'bona fide' customers."  *Calcano*, 36 F.4th at 82.  Thus, Judge Lohier correctly recognized the overlap between the standing and merits inquiries.  *Warth*, 422 U.S. at 500.

**E.      Defendant's Reliance Upon a Telephone or Email Accommodation Fails to Comply with the DOJ's Regulation.**

Although Defendant relies upon a purported telephone or email accommodation, (Def.'s Mem. at 10-15), Defendant's analysis is flawed.

As initial matter, Defendant has failed to explain how its customer service representative would be able to effectively communicate with Plaintiffs either by telephone or over the Internet via email when Plaintiffs are unable to read their screens. "For example, there is no indication from [Defendant] that the sales representative would be using remote access technology which would allow them to read [Plaintiffs'] screen back to [them] over the phone." *Weekes*, 2023 WL 2368989, at *6.

In addition, Defendant conveniently ignores that the specific regulation promulgated by the U.S. Department of Justice that Defendant seeks to rely upon, 28 C.F.R. § 36.303, imposes a requirement that Defendant's auxiliary aids and services protect the "privacy and independence" of the disabled individuals to whom Defendant offers its auxiliary aids and services. 28 C.F.R. § 36.303(c)(1)(ii).

Plaintiffs' "privacy and independence" have legal significance in the context of the specific ADA violation at issue in the Complaint. 42 U.S.C. § 12182(b)(2)(A)(iii).

Simply put, the accommodations purportedly provided by Defendant including its telephone number and an email address to contact Defendant's customer service representatives did not protect Plaintiffs' independence because it would have required the intervention of another individual whereas a website is automated. *Thurston v. Midvale Corp.*, 39 Cal. App. 5th 634, 651 (2019) ("Appellant did not offer any evidence refuting [plaintiff's] statement that the use of a telephone number ... would deprive her of independence."). In addition, it is surely beyond dispute that Plaintiffs' privacy surely would have been in jeopardy as well via such communications.

Furthermore, Defendant implicitly concedes that its live customer service representatives were limited to assisting callers during unspecified "business hours" only. (Def.'s Mtn. to Dism. Compl. at 1) ("If Plaintiffs called Defendant's customer service line ***during business hours*** or emailed the dedicated customer service email address, they could have been helped by a live individual to learn about Defendant's products, and been assisted to purchase a product.") (emphasis added). In other words, if a blind individual calls Defendant's customer service telephone line outside of "business hours," then such accommodation would be completely useless to such individual. *Weekes*, 2023 WL 2368989, at *6 ("there appears to be no alternative auxiliary aid if [plaintiff] were to visit the website before or after business hours").

Similarly, Defendant offers no evidence averring that if a blind individuals sends an email to Defendant outside of "business hours," then a customer service representative would immediately respond to a blind individual's inquiry. Assuming that Defendant's customer service representatives only respond to emails during "business hours," then Defendant's purported email accommodation would be as equally problematic as its telephone service accommodation.

### 1.    *Castillo v. John Gore Organization, Inc.* Is Both Unpersuasive and Distinguishable.

Defendant's reliance upon *Castillo v. John Gore Organization, Inc.*, 2019 WL 6033088 (E.D.N.Y. Nov. 14, 2019), is misplaced for several reasons.

First, *Castillo* failed to address the applicability of the DOJ's regulation requiring "privacy and independence" for any alternative accommodation offered by a place of public accommodation at 28 C.F.R. § 36.303(c)(1)(ii). As such, *Castillo*'s reasoning cannot be viewed as persuasive given that *Castillo* omitted any analysis of the "privacy and independence" requirements on its standing analysis. *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37-

38 (1952) (prior decision is not binding precedent on point not raised in briefs or argument nor discussed in the opinion of the Court in that case); *see also Webster v. Fall*, 266 U.S. 507, 511 (1925) ( "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *Murphy v. Nissan Motor Corp. in U.S.A.*, 650 F. Supp. 922, 927 (E.D.N.Y. 1987) (finding that a published district court decision was "unpersuasive" because it did not consider certain statute as part of analysis).

Second, *Castillo* is factually distinguishable because the plaintiff therein only alleged a deterrence theory of ADA liability, *i.e.*, the plaintiff alleged no ***personal encounter*** with any ADA violation. *Castillo*, 2019 WL 6033088, at *5 ("the only injury that the plaintiff could have suffered is deterrence from visiting the theater"). Courts in the Second Circuit recognize that a plaintiff can have an injury in fact under the ADA by ***personally encountering*** an accessibility barrier. *Perdum v. Forest City Ratner Cos.*, 174 F. Supp. 3d 706, 714-15 (E.D.N.Y. 2016) ("What constitutes an injury in fact under the ADA is that the plaintiff has '***personally encounter[ed]*** the barrier to access complained of, or [ ] has actual knowledge of the barrier complained of and has been deterred from visiting the public accommodation because of that barrier.'") (emphasis added), *aff'd*, 677 Fed. Appx. 2 (2d Cir. 2017) (citing *Panzica v. Mas–Maz, Inc.*, No. 05–CV–2595, 2007 WL 1732123, at *3 (E.D.N.Y. June 11, 2007)). In stark contrast, Plaintiffs, here, have alleged their ***personal encounters*** with multiple accessibility barriers on Defendant's Website. (Compl. ¶¶ 4-5, 25-26, 28-29.) Thus, *Castillo* is akin to comparing apples to oranges.

Third, *Castillo* is factually distinguishable because it relied heavily upon the sequencing of the homepage content such that "before even reaching the theater's policy prohibiting 'outside

food or beverage,' . . . a website user must have first scrolled past the theater's accessibility policy." *Castillo*, 2019 WL 6033088, at *5.  Based on such sequencing, the court found that "the more reasonable inference to be drawn was that any discrimination inflicted by the outside-food prohibition would end when the defendant received and responded to a request for a reasonable accommodation." *Id.*  In contrast, there is nothing to indicate that any similar sequencing on Defendant's Website exists.  It is beyond dispute that Defendant's "Accessibility Statement" is only viewable as a webpage, which becomes visible to users only after clicking a hyperlink to such webpage at the bottom of the homepage.  In other words, there is no requirement that all users click on such hyperlink or that such "Accessibility Statement" becomes visible to users immediately upon visiting Defendant's Website.  Moreover, unlike the circumstances at issue in *Castillo*, Defendant's "Accessibility Statement" is meaningless given the accessibility barriers personally encountered by Plaintiffs.  As soon as Plaintiffs encountered such barriers, the discrimination had already taken place.  Thus, unlike the theater policy prohibiting "outside food or beverage" at issue in *Castillo*, which could potentially be waived for diabetic individuals, *Defendant's website barriers would have continued to hinder Plaintiffs' use of Defendant's Website even if they had contacted Defendant via its telephone number or email*.

Fourth, *Castillo* is factually distinguishable because the court found it not reasonable to infer that the plaintiff, a resident of Kings County, New York, intended to visit the defendant's theater in Boston, Massachusetts in the first place given that she had not alleged any past visits to such theater.  *Castillo*, 2019 WL 6033088, at *6.  This geographic factor, of course, is irrelevant here because Defendant does not claim to have a brick-and-mortar store location for Plaintiffs to visit.

**F.    Defendant's Mootness Defense Is Premature to Resolve as a Matter of Law Given the Evidentiary Record.**

"It is black-letter law that a 'voluntary cessation of challenged conduct does not ordinarily render a case moot.'" *Hecht v. Magnanni Inc.*, 2022 WL 974449, at *4 (S.D.N.Y. Mar. 31, 2022) (Vyskocil, J.) (citation omitted). A "request for injunctive relief under the ADA will only be deemed moot if the Defendant meets the 'formidable burden' of demonstrating that it is 'absolutely clear the alleged wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

### 1. This Court's Decision in *Hecht v. Magnanni Inc.* Is Directly on Point Because the Parties Have Submitted Conflicting Evidence Regarding Whether the Website Barriers Continue to Exist.

Defendant's reliance on the mootness defense, (Def.'s Mem. at 15-20), is misplaced. Although Defendant has implied that it has remedied each of the barriers alleged by Plaintiffs, Plaintiffs have concurrently submitted admissible evidence confirming that Defendant's Website continues to contain barriers hindering its use by blind individuals. (Jones Decl. ¶¶ 3-4 & Ex. 1.)

This Court's decision in *Hecht*, 2022 WL 974449, at *3-*4, which similarly involved "competing affidavits and exhibits," *id.* at *3, and denied a similar motion to dismiss, is directly on point.[13] Notably, this Court noted therein that its "determination comports with what appears to be the consensus of the courts in this district that have decided similar questions." *Id.* at *4 (citing *Sullivan v. Study.com LLC*, No. 18 Civ. 1939 (JPO), 2019 WL 1299966, at *5 (S.D.N.Y. Mar. 21, 2019) (rejecting mootness argument where plaintiff identified continued barriers to accessing certain videos on defendant's website); *Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d 438, 442 (S.D.N.Y. 2018) (denying motion to dismiss asserting mootness doctrine because defendant did "not provide any affirmative showing that its current website is ADA-compliant, and will

---

[13] Defendant's omission of *Hecht* is curious. Defendant should have addressed *Hecht* in its initial Memorandum of Law.

remain that way"); *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *11-*12 (S.D.N.Y. Dec. 20, 2017) (same, where complaint alleged, and court's review of website confirmed, at least one continued barrier to access); *cf. Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647 (S.D.N.Y. 2017) (rejecting claim where defendant was still remediating access at time of filing the motion and where supporting affidavit provided insufficient detail to corroborate claims of compliance with ADA)).[14]

Thus, Defendant has failed to satisfy the "*stringent* showing required by the Supreme Court's mootness precedents." *Diaz v. Kroger Co.*, 2019 WL 2357531, at *5 (S.D.N.Y. June 4, 2019) (Failla, J.) (emphasis added).

### 2. *Diaz v. Kroger Co.* and *Guglielmo v. Nebraska Furniture Mart, Inc.* Are Both Distinguishable.

Defendant's reliance on *Diaz v. Kroger Co.*, 2019 WL 2357531 (S.D.N.Y. June 4, 2019) (Failla, J.), and *Guglielmo v. Nebraska Furniture Mart, Inc.*, 2020 WL 7480619 (Dec. 18, 2020) (Failla, J.), is misplaced because both of those decisions are factually distinguishable.

In *Diaz*, the Court found the website barriers to be moot because:

"[the defendant's Group Product Design Manager] does not present some future plan for remediation of the Website, or some conclusory assertion that the Website is today compliant with the ADA. Instead, Mr. Whiting avers specifically that (i) Defendant undertook compliance with the WCAG standards before the lawsuit was filed; (ii) the Website is today compliant with those standards; (iii) he personally confirmed that the specific barriers to access identified in Plaintiff's initial and amended complaints 'have been remedied and that no such barriers to access, as alleged, still exist with the website'; (iv) Defendant has no intention of undoing those changes or regressing to non-

---

[14] *See also Brooks v. Lola & Soto Bus. Group, Inc.*, 2022 WL 616798, at *6 (E.D. Cal. Mar. 2, 2022); *Monge v. 405 Hotel LLC*, 2021 WL 982866, at *9 (E.D.N.Y. Feb. 24, 2021) (Lindsay, Mag. J.) (ADA website claim not moot where defendant voluntarily updated website), *report and recommendation adopted*, 2021 WL 980870 (E.D.N.Y. Mar. 15, 2021) (Feuerstein, J.); *Walters v. Simply Skinny Ties, LLC*, 2020 WL 7248346, at *2-*4 (N.D.N.Y. Dec. 9, 2020) (same); *Haynes v. Hooters of Am., LLC*, 893 F.3d 781, 784 (11th Cir. 2018); *Markett v. Five Guys Enterprises LLC*, No. 17 Civ. 788 (KBF), 2017 WL 5054568, at *3 (S.D.N.Y. July 21, 2017) (Forrest, J.); *Brooke v. A-Ventures, LLC*, No. 2:17 Civ. 2868 (HRH), 2017 WL 5624941, at *3 (D. Ariz. Nov. 22, 2017); *National Fed'n of Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1193 (N.D. Cal. 2007).

> compliance with the ADA; and (v) Defendant commits 'to keep its website up to date and compliant with all applicable standards to make the website as accessible to all as possible.'"

*Diaz*, 2019 WL 2357531, at *3. Notably, the Court emphasized that "Plaintiff does not dispute the factual assertions [Defendant's Manager] makes regarding Defendant's efforts at ADA compliance," *i.e.*, that the modifications have been "completed." *Id.* at *4.

In *Guglielmo*, the Court noted that the defendant's representative had submitted a declaration attesting that: "(i) prior to the instant litigation, Defendant had invested time and resources in improving the Website's accessibility; (ii) Defendant has since remedied each of the ADA violations alleged by Plaintiff; and (iii) going forward, Defendant intends to commence a significant redesign of the Website, of which accessibility will be a 'central aspect.'" *Guglielmo*, 2020 WL 7480619, at *6.

Thus, in both *Diaz* and *Guglielmo*, the Court concluded that all of the plaintiff's assertions of barriers had been remediated. In stark contrast, here, Plaintiffs have concurrently submitted admissible evidence confirming that Defendant's Website continues to contain barriers hindering its use by blind individuals. (Jones Decl. ¶¶ 3-4 & Ex. 1.) Indeed, Plaintiff's retained accessibility expert conducted his audit of the Website after Kingett's review of the Website. (Kingett Decl. ¶ 4) (Feb. 8, 2023 review); (Jones Decl. ¶ 3 & Ex. 1) (February 23, 2023 audit). Thus, a factual dispute exists regarding the current accessibility of the Website. In contrast, no such factual dispute existed in either *Diaz* or *Guglielmo*.

In addition, *Guglielmo* noted that the defendant: "(i) details the audit process that Defendant undertook to identify issues relating to Plaintiff's allegations; (ii) provides quantified examples of the audit's findings[.]" *Guglielmo*, 2020 WL 7480619, at *6. In contrast, here, the

Wolken declaration provides no details regarding Defendant's audit process in response to Plaintiff's allegations nor any quantified examples of the audit's findings.

Furthermore, *Guglielmo* noted that the defendant "observes that 'very few' instances of the access barriers alleged by Plaintiff were actually identified[.]" *Guglielmo*, 2020 WL 7480619, at *6. In contrast, the Wolken Declaration fails to make a broad declarative averment stating that Defendant failed to corroborate the existence of the broad variety of accessibility barriers alleged by Plaintiffs. Such omission speaks volumes.

Finally, in both *Diaz* and *Guglielmo*, the defendants therein had averred that they had undertaken to comply with either WCAG guidelines or otherwise invested time and resources to improve website accessibility prior to the inception of such lawsuits. *Diaz*, 2019 WL 2357531, at *3; *Guglielmo*, 2020 WL 7480619, at *6. In stark contrast, Defendant has failed to provide any evidence indicating that it had "invested time and resources in improving the Website's accessibility" prior to the commencement of the instant action or, more importantly, prior to receiving Plaintiffs' pre-filing demand letter dated July 20, 2022. (Ferrell Decl. ¶ 2 & Ex. 1.) In this regard, Defendant's averment that "Prior to the filing of the Complaint, Plaintiffs did not contact Second Story or notify Second Story that they had trouble accessing the Website," (Wolken Decl. ¶ 10; Doc. 15-2), is false. Indeed, not only did Plaintiff Martin's counsel send a pre-filing demand letter to Defendant's headquarters on July 20, 2022 via overnight delivery, (Ferrell Decl. ¶ 2 & Ex. 1), Defendant's Iowa counsel responded to such letter on August 24, 2022, which irrefutably confirms Defendant's receipt of such letter, (Ferrell Decl. ¶ 3 & Ex. 2).

## II.    CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request that the Court deny Defendant's Motion and grant such further and other relief as the Court deems appropriate and necessary.

Respectfully submitted,

**CLARK LAW FIRM, PC**


**By: /s/ Gerald H. Clark**
**GERALD H. CLARK, ESQ.**

Gerald H. Clark, Esq.
811 Sixteenth Avenue
Belmar, New Jersey 07719
Phone: (732) 443-0333
Fax (732) 894-9647

Pacific Trial Attorneys, P.C.
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF systems, which will provide notification of such filing to all counsel of record.

/s/ Gerald H. Clark
Gerald Clark, Esq.